UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL A NARDI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 CV 8906 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| NORTH EAST ) | |
| MULTI-REGIONAL TRAINING INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael A. Nardi, a police officer previously employed by the Chicago Heights Park District Police Department ("Police Department"), brings this action against Defendant North East Multi-Regional Training Inc. ("NEMRT"), a public-safety training and testing facility. (R. 18, Second Am. Compl.) Plaintiff alleges that NEMRT engaged in unlawful employment discrimination on the basis of his disability by failing to ensure testing accommodations, thus violating Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101 *et seq.* (*Id.* ¶ 1.) NEMRT seeks to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 20, Mot. at 1.) For the reasons stated below, the motion to dismiss is granted.

## RELEVANT FACTS

Plaintiff, who suffers from the learning disability dyslexia, was employed as a police officer with the Police Department. (R. 18, Second Am. Compl. ¶¶ 1, 5.) As part of his continued employment, Plaintiff was required to pass a mandatory police officer test. (*Id.* ¶ 9.) NEMRT is a not-for-profit corporation in the Chicago metropolitan area that "provid[es] ongoing training and testing of police and corrections personnel." (*Id.* ¶¶ 6, 8.) Prior to the exam, Plaintiff and the

Chief of Police for the Police Department notified two NEMRT instructors, Tom Dreffein and Fran Marrocco, of Plaintiff's disability and his need for testing accommodations for that disability. (*Id.* ¶ 10.) Despite these communications, Plaintiff alleges that he was told by the instructors that he could not have an accommodation for the test. (*Id.*) Plaintiff proceeded to take the test at Triton College and failed. (*Id.* ¶¶ 5, 9.) As a result, Plaintiff was terminated from the Police Department on August 24, 2014. (*Id.* ¶ 5.) Plaintiff alleges he was unable to pass the test because it was administered without the requested accommodations for his disability. (*Id.* ¶ 9.) Plaintiff does not allege that he renewed his accommodation requests directly to the Police Department prior to his dismissal and he has not brought suit against the Police Department.

Following his termination, Plaintiff brought suit against NEMRT asserting a single claim under Title I of the ADA. (R. 3, Compl.) Since his original filing, Plaintiff has amended his complaint twice and has continually maintained his ADA claim against NEMRT. (R. 15, Am. Compl.; R. 18, Second Am. Compl.) Although NEMRT's exact role in the administering of the test is unclear from the face of the complaint, Plaintiff alleges that NEMRT intentionally discriminated against him by failing to assist him in securing an accommodation for the test and, therefore, caused Plaintiff to fail the test and lose his job. (R. 18, Second Am. Compl. ¶ 9.) On March 22, 2016, NEMRT filed its motion to dismiss. (R. 20, Mot.) On May 3, 2016, Plaintiff responded and NEMRT replied on May 17, 2016. (R. 23, Resp.; R. 24, Reply.)

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a claim by alleging the plaintiff has failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Under federal pleading standards, a proper complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Plaintiff must also state

enough factual allegations to state a claim for relief that is not only conceivable, but plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, in order to survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Id.* at 555 (internal citation omitted). "In construing the complaint, [the court will] accept all well-pleaded facts as true and draw reasonable inferences in the [nonmovant's] favor." *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016). However, a court need not "accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (citation omitted).

## ANALYSIS

Defendant argues that the ADA claim should be dismissed because Plaintiff does not allege that an employment relationship existed between the parties. (R. 20, Mot. at 4-5.) In response, Plaintiff urges the Court to construe the ADA as broadly as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and determine that an employment relationship between Defendant and himself is unnecessary to state an ADA claim. (R. 23, Resp. at 4.) Plaintiff also argues that, regardless of whether Defendant may technically be described as an "employer," Defendant is an "agent" of a covered entity and controlled Plaintiff's employment and is, therefore, a properly named defendant. (*Id.* at 6) For the reasons below, Plaintiff may not maintain an ADA claim because he does not allege that he and NEMRT had an employment relationship, that NEMRT controlled his employment, or that NEMRT can be liable as an agent of the Police Department. Thus, Plaintiff's claim must be dismissed.

**I.     Under the ADA, Plaintiff Must Allege an Employment Relationship**

3

First, the Court must determine whether Title I of the ADA requires an employment relationship between Plaintiff and Defendant. As discussed below and contrary to Plaintiff's arguments, the Court finds that Plaintiff must allege an employment relationship in order to state a claim under Title I of the ADA.

The ADA prohibits an employer from discriminating against an employee because of a disability that the employee may have. 42 U.S.C. § 12112(a). Title I of the ADA only applies to discrimination by a "covered entity." Specifically, Section 12112(a) of the ADA states: "*No covered entity* shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* (emphasis added). In order to qualify as a "covered entity" the defendant must be "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111.[1] An "employer" is defined in the ADA as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 12111(5)(A).

"The term 'employee' means an individual employed by an employer." 42 U.S.C. § 12111(4). This definition has been described as "vague and circular" by many courts. *Bluestein v. C. Wis. Anesthesiology, S.C.*, 769 F.3d 944, 951 (7th Cir. 2014); *see also Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 444 (2003) (noting that the definition of "employee" in the ADA is "completely circular and explains nothing" (citation omitted)). Because the ADA does not provide a working definition of "employee," "courts should turn to

---

[1] Plaintiff does not allege or argue that NEMRT is an employment agency, labor organization, or joint labor-management committee; thus, the Court focuses only on whether NEMRT falls under the category of "employer."

4

the common law test for determining who qualifies as an employee." *Bluestein*, 769 F.3d at 951. Under the common law definition, the focus is on control; specifically, "a servant is a person whose work is controlled or is subject to a right to control by the master." *Id.* at 952. While courts have noted the problematic definition of the term "employee" under the ADA, numerous courts have nonetheless concluded that Title I of the ADA requires that the defendant be a "covered entity," including that an employment relationship existed between the plaintiff and defendant. *See id.* at 951-56 (affirming summary judgment in favor of defendant because plaintiff did not establish that she was an "employee" as required by the ADA); *Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 809 (7th Cir. 2014) ("[I]n order to assert her rights under the ADA as an employee, [the plaintiff] must establish that she was 'employed by' the employer that she seeks to hold liable."); *Hernandez v. Valet Parking Serv., Inc.*, No. 04 C 7559, 2005 WL 2861054, at *2 (N.D. Ill. Oct. 27, 2005) ("The ADA only protects the employees of an employer.").

"Under limited circumstances, a third-party may be sued under the ADA even if it is not the plaintiff's employer or potential employer, under an indirect liability theory." *Chi. Reg'l Council of Carpenters v. Pepper Constr. Co.*, 32 F. Supp. 3d 918, 923 (N.D. Ill. 2014). In such cases, the focus (among other considerations) is also control. *Id.* Specifically, courts will "look at factors such as the entity's control and supervision over the worker, the type of business operation in question, the responsibility for costs, the type of payment and benefits provided to the employee, and the length of the job." *Id.* Thus, the plain language of the ADA, as well as supporting case law, demonstrates that a plaintiff must plead the existence of an employment relationship or, under limited circumstances, an indirect theory of liability. *See Penteris v. Citgo Petroleum Corp.*, 104 F. Supp. 3d 894, 900 (N.D. Ill. 2015) (denying motion to dismiss ADA

5

claim and concluding that the plaintiff's "allegations suggest that [the defendant] exercised control over the administration of the drug test and employment decisions" and thus was a joint employer of the plaintiff); *see also Pepper*, 32 F. Supp. 3d. at 922-23.

Plaintiff's argument that an employment relationship is unnecessary for a Title VII claim ignores clearly established Seventh Circuit precedent. (R. 23, Resp. at 4-6.) Courts evaluating whether an employment relationship is required under Title VII have come to similar conclusions as the courts that have addressed the employment-relationship requirement under the ADA. This is not surprising "[a]s the motivation and implementation behind the ADA was similar to that of [Title VII], [and] courts often look to [Title VII] for ADA guidance." *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 600 (7th Cir. 2011). Indeed, the definitions of "employer" and "employee" found in Title VII are virtually identical to those in the ADA and have been treated similarly by courts. *Compare* 42 U.S.C. § 12111(4) ("The term 'employee' means an individual employed by an employer."), *with* 42 U.S.C. § 2000e(f) ("The term 'employee' means an individual employed by an employer[.]"); *see also U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-80 (7th Cir. 1995) ("The ADA's definitions of 'employer' mirrors the definition of 'employer' in Title VII of the Civil Rights Act of 1964 and in the Age Discrimination in Employment Act.").

The Seventh Circuit has held that a plaintiff must allege an employment relationship under Title VII. In *Alexander v. Rush North Shore Medical Center*, 101 F.3d 487 (7th Cir. 1996), the Seventh Circuit explicitly considered whether the plaintiff physician "could maintain a Title VII action against [the defendant hospital] even absent a demonstration of an employment relationship between himself and the hospital." *Id.* at 490. The answer was no. The Seventh Circuit affirmed summary judgment on behalf of the defendant because the physician was not the

6

defendant's employee. *Id.* at 494. Specifically, the Court held that "a plaintiff must prove the existence of an employment relationship in order to maintain a Title VII action against the defendant." *Id.* at 492 (alteration, citation, and internal quotation marks omitted). In *Alexander*, the court applied a five factor "common law test, which involves the application of the general principles of agency to the facts." *Id.* (citation and internal quotation marks omitted). The court stated that "[o]f the several factors to be considered, the employer's right to control is the most important when determining whether an individual is an employee or an independent contractor." *Id.* at 492-93 (alteration and citation omitted). After application of the test, the Court determined that the plaintiff was not an employee of the hospital defendant and, thus, he was "preclude[d] . . . from bringing a Title VII action against the hospital." *Id.* at 493.

Thus, contrary to Plaintiff's assertions, the Seventh Circuit's holding in *Alexander* demonstrates that in order to maintain a Title VII action against a defendant, a plaintiff must allege the existence of an employment relationship.[2] *See also Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015) ("In order to bring a Title VII claim against [the defendant], [the plaintiff] must prove the existence of an employer-employee relationship."); *Nardi v. ALG Worldwide Logistics*, 130 F. Supp. 3d 1238, 1246-49 (N.D. Ill. 2015) (determining at summary judgment that outsourced human resources provider was not an employer for Title VII liability);

---

[2] In light of the holding in *Alexander*, which is binding on this Court, the Court will not exhaustively distinguish all of the out-of-circuit and decades-old cases that Plaintiff relies upon in his response, (R. 23, Resp. at 4-6). However, the Court will briefly address the sole Seventh Circuit case cited by Plaintiff—*Doe v. St. Joseph's Hospital of Fort Wayne*, 788 F.2d 411, 413 (7th Cir. 1986). In *Doe*, the Seventh Circuit reversed the district court's dismissal of a Title VII claim and held that Plaintiff was not required to show an employment relationship between the plaintiff and the defendant as a prerequisite to a claim under Title VII. *Id.* at 422-25. However, *Alexander* overturned *Doe*. *Alexander*, 101 F.3d at 488. In *Alexander*, the Seventh Circuit explicitly stated that the "application of this [new] rule . . . would have effected precisely the opposite result from that reached in *Doe's* majority opinion." *Id.*; *see also id.* at 491 ("*Doe's* conceptual underpinnings, however, can no longer hold fast[.]"). As such, Plaintiff's reliance on *Doe* is unavailing.

*Shah v. Littelfuse Inc.*, No. 12 CV 6845, 2013 WL 1828926, at *3 (N.D. Ill. Apr. 29, 2013) ("To maintain a cause of action for discriminatory discharge under Title VII, a plaintiff must allege the existence of an employment relationship.").

Similar to ADA claims, the Seventh Circuit has also stated that an indirect liability theory may be sufficient to invoke Title VII protection in limited circumstances. *See Love*, 779 F.3d at 701 ("[W]e conclude that [the defendant] exercised insufficient control over [the plaintiff], such that no reasonable jury could conclude that [the defendant] was [the plaintiff's] indirect employer under Title VII."); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 668-69 (7th Cir. 2013) (affirming dismissal of a Title VII claim and discussing how an affiliate of the employer could be named as a defendant pursuant to an indirect theory of liability); *see also Kerr v. WGN Cont'l Broad. Co.*, 229 F. Supp. 2d 880, 886 (N.D. Ill. 2002) (adopting the indirect liability theory in Title VII case but concluding that the defendant did not exercise sufficient control over the plaintiff to be considered an indirect employer). Thus, Plaintiff's assertion that "based upon the . . . similarities between the ADA and Title VII, . . . the ADA does not require an employment relationship between himself and defendant as a prerequisite to a claim under [the] ADA," (R. 24, Resp. at 4), must be rejected. In order to state a claim under Title I of the ADA, Plaintiff

must allege that an employment relationship existed between the parties or, under limited circumstances, that the defendant had the right to control the plaintiff's employment.[3]

## II. Plaintiff Does Not Allege an Employment Relationship Between the Parties

Plaintiff explicitly alleges that he "was an employee of Chicago Heights Park District Police Department," and not of NEMRT. (R. 18, Second Am. Compl. ¶ 5.) However, Plaintiff argues that NEMRT should be considered an employer because it "exercised control over an important aspect of his employment" for the purposes of the ADA. (R. 23, Resp. at 5.) Defendant argues in response that this case may be distinguished from those accepting an indirect liability theory because NEMRT was not a party that "significantly affected an individual's access to employment opportunities in some respect." (R. 24, Reply at 4.) Defendant is correct.

The holding in *Pepper* is instructive. 32 F. Supp. 3d 918. In *Pepper*, a case very similar to this one, the plaintiffs Chicago Regional Council of Carpenters and Elmo McKinney, a carpenter with a disability, filed an ADA suit against the defendants, Pepper Construction and WorkSTEPS, Inc. *Id.* at 921. WorkSTEPS was an organization which supervised a national network of clinics that administer physical and medical examinations for employers. *Id.* McKinney sought a position with Pepper, but was denied employment based on the results of his examinations administered at a WorkSTEPS clinic. *Id.* McKinney alleged that WorkSTEPS's

---

[3] Plaintiff also argues that an employment relationship is unnecessary for an ADA claim if the defendant engages in any of the discriminatory behavior enumerated under 42 U.S.C. § 12112(b). (R. 23, Resp. at 7.) Plaintiff cites to no persuasive or instructive case law for this proposition. Plaintiff again cites to *Doe*—which the Court has already explained was overturned by *Alexander*. He also cites to *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973). The Court does not find *Sibley* persuasive in this instance as it "has been questioned by courts in this circuit." *Pepper*, 32 F. Supp. 3d. at 923; *Kerr*, 229 F. Supp. 2d at 887-88 (noting that the Seventh Circuit, in dicta, has rejected *Sibley's* rationale). Plaintiff has not pleaded facts sufficient to support the inference that any employment relationship existed between him and Defendant. Nor has Plaintiff presented a compelling argument that Defendant engaging in behavior prohibited by the ADA excuses him from this requirement.

"role in the hiring process was to develop a battery of tests that were administered by" another company and that "the test results were relied upon by Pepper in its decision not to hire McKinney." *Id.* at 922. WorkSTEPS argued that it was not a proper defendant because it was not an employer or potential employer of McKinney. *Id.* The *Pepper* court held that despite allegations that WorkSTEPS designed and administered the test, it was not "an employer, an indirect employer, or a joint or de facto employer" of the plaintiff. *Id.* at 923. In addition, the court stated that there were no allegations to "support the inference that WorkSTEPS had any direct authority to determine whether Pepper hired McKinney." *Id.* Thus, the court granted the dismissal because, "the facts alleged in the complaint provide[d] no basis to hold WorkSTEPS liable under the ADA." *Id.* at 924.

This Court is inclined to follow the well-reasoned, factually analogous, and persuasive opinion in *Pepper*. Similar to *Pepper*, Plaintiff has not alleged any factual content to support an inference that NEMRT was Plaintiff's indirect employer, de facto employer, or had any direct authority to determine whether the Police Department hired or fired Plaintiff. Plaintiff argues that NEMRT's control over the "training and testing of law enforcement employees," and the fact that NEMRT "retained the right to control the manner in which it administered these training benefits," are sufficient to make NEMRT an "employer" or at least an "agent" of his employer. (R. 23, Resp. at 5-6.) However, the 13-paragraph second amended complaint is quite sparse on any information regarding NEMRT. Plaintiff clearly alleges that the Police Department employed Plaintiff, it required the test for continued employment, and it terminated his employment after he failed the test. (R. 18, Second Am. Compl. ¶¶ 5, 9.) As to NEMRT, Plaintiff alleges that despite informing two of NEMRT's employees of the need for an accommodation, NEMRT failed to assist Plaintiff in obtaining the accommodation. (*Id.* ¶¶ 9-10.) Simply put, and

similar to the case in *Pepper*, there are no allegations that NEMRT had any direct authority or even involvement in the decision to fire Plaintiff after he had failed the police test. *Compare Hall v. Walsh Constr. Co.*, No. 11 CV 08706, 2012 WL 3264921, at *3 (N.D. Ill. Aug. 9, 2012) (denying motion to dismiss Title VII claim when the plaintiffs sufficiently alleged that the defendant was their de facto employer because the defendant "controlled the job operations, subcontractors, and day-to-day duties at some of the job sites where they worked"), *with Atkins v. Northrop Grumman Tech. Servs.*, 1:07-cv-1669-LJM-TAB, 2008 WL 5062785, at *2 (S.D. Ind. Nov. 24, 2008) (dismissing Title VII claim when plaintiff failed to allege that the defendant "exerted control over [the plaintiff's] employment" and "did not allege that [the defendant] pulled the strings in the background and controlled employment decisions regarding [the plaintiff]" (alterations, citation, and internal quotations marks omitted)).

This Court also rejects Plaintiff's argument that NEMRT is an "agent" of a "covered entity," namely the Police Department. (R. 23, Resp. at 6.) Specifically, Plaintiff asserts that his allegations demonstrate that NEMRT was "act[ing] on behalf of the entity in the matter of providing and administering training and testing." (*Id.*) As stated in *Pepper*, "insofar as WorkSTEPS made evaluations of employment qualifications on behalf of Pepper, that would provide a basis to impute liability to Pepper for WorkSTEP's actions, not the other way around." 32 F. Supp. 3d at 923. Indeed, the *Pepper* court pointed out that an employer may not use the fact that a third party or "agent" designed the pre-employment test to shield its own liability. *Id.* at 923-24.

Similarly, the Plaintiff's agency theory fails here. If NEMRT made evaluations of employment qualifications on behalf of the Police Department, that would provide a basis to impute liability to the police department for NEMRT's actions, not the other way around. *Id.* at

923. Plaintiff's allegations do not support the inference that NEMRT had sufficient control over Plaintiff's employment as required by the agency theory. Although courts have recognized these de facto "employer" theories put forward by Plaintiff, they have generally remained limited to narrow circumstances, and those circumstances are not alleged here. *See, e.g., Penteris,* 104 F. Supp. 3d 899-901; *Hall*, 2012 WL 3264921, at *3. As such, because Plaintiff does not allege that an employment relationship existed between the parties and does not put forth any other plausible theory of indirect liability, Plaintiff's ADA claim must be dismissed.

The Seventh Circuit has directed that "if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). While the Court is skeptical of Plaintiff's ability to allege that it has an employment relationship with NEMRT or that NEMRT could be liable under an indirect theory of liability, Plaintiff will be given the opportunity to replead his claims.

## CONCLUSION

For the foregoing reasons, NEMRT's Rule 12(b)(6) motion to dismiss (R. 20) is GRANTED. While the Court dismisses Plaintiff's second amended complaint, his failure to adequately plead his claims at this early stage in the litigation is not fatal. In the interest of justice, Plaintiff is granted leave to file an amended complaint consistent with this opinion by September 30, 2016. Plaintiff's failure to file an amended complaint by the deadline will result in the dismissal of this case with prejudice.

The parties shall appear for a status hearing on October 12, 2016, at 9:45 a.m. Finally, the parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing.

ENTERED: /s/

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: July 27, 2016**